## JOSIAH B. WAMPLER v. ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, Appellant.

In Banc, December 21, 1916.

1. **MOTION FOR NEW TRIAL: Sufficiency: Erroneous Instructions: Raised by Demurrer to Evidence.** A motion for a new trial which contains as one of its grounds that "the court erred in overruling defendant's demurrer to the evidence interposed at the close of plaintiff's case" is sufficiently specific to authorize the appellate court to review alleged errors in the giving and refusing of instructions.

2. ———: **Specific Assignments: Section 1841 Refers to Pleadings.** *Held*, by GRAVES, C. J., a majority neither concurring nor dissenting, that section 1841, Revised Statutes 1909, is now and has long been a part of the article devoted to the distinct subject-matter of "Pleadings," and in saying that "all motions shall be accompanied by a written specification of the reasons upon which they are founded, and no reason not so specified shall be urged in support of the motion" it had reference to motions of all kinds which are of themselves in the nature of pleading, or which attack a pleading, and not to motions for new trials in civil cases. This view is further fortified by the fact that section 2045, which is found in the article pertaining to new trials and is the only section in the article pertaining to motions for new trials, says nothing about the contents of such motions.

*Held*, by BOND, J., with whom REVELLE, J., concurs, that section 1841, in express terms, is applicable to all motions, and cannot be limited to certain motions filed during the trial of a lawsuit; but its requirement that motions "shall be accompanied by written specifications of the reasons on which they are founded" is sufficiently met, to authorize a review of errors in the matter of instructions, by a motion for a new trial which contains as assignments that the court erred "in refusing to give each and all instructions requested by defendant" and "in giving each and every instruction which it did give at the request of plaintiff."

*Held*, by WALKER, J., that the mere arbitrary arrangement of a section of the code does not afford a cardinal reason for its interpretation, but the text, the subject-matter and the purpose intended to be effected should first be considered in ascertaining its meaning; that section 1841 is clear and definite and should be construed and applied according to its unmistakable meaning, and when that is done it has reference to all motions, filed for whatever purpose in a suit; and it does not permit general assignments in a motion for a new trial.

3. ———: **General Assignment Sufficient.** A motion for a new trial which contains no reference (either general or specific) to the error complained of, is not sufficient; but it is sufficient to make a general assignment of error in the motion, both as to the reception and exclusion of evidence, and the giving and refusal of instructions. [WALKER, J., dissenting.]

4. ———: ———: **As to Errors in Instructions.** A general assignment in the motion for a new trial that the court erred in the giving or refusing of instructions does no injustice to the trial court, for the instructions are the court's and the giving or refusal of instructions is the court's act, and a general assignment sufficiently advises him that he has erred in his declarations of law as applicable to the case. [WALKER, J., dissenting.]

5. **NEGLIGENCE: Master and Servant: Starting Train With Jerk.** Where plaintiff, employed to post signs on gate openings between certain towns along defendant's railroad, asked the conductor of a through freight train permission to ride to one of such towns and was told the train would slow up there, and plants his case on an allegation that said train after it had slowed up "suddenly started forward with a violent and unusual jerk," whereby he was thrown from the flat car upon which he had placed himself, he fails to prove his case if he adduces no evidence that the jerk was an unusual one in the operation of freight trains.

6. ———: ———: ———: **Recovery as Passenger.** Where plaintiff grounds his action upon the relation of master and servant, he cannot invoke the rule regulating the relationship of carrier and passenger.

Appeal from Jackson Circuit Court.—*Hon. Harris Robinson*, Judge.

REVERSED.

*Thomas R. Morrow, Cyrus Crane, George J. Mersereau* and *John H. Lathrop* for appellant:

(1) The peremptory instructions should have been given. There was no proof of any actionable negligence. The jerk or jolt of the train was not unusual or violent and therefore not negligent. Hedrick v. Railroad, 195 Mo. 104; Waite v. Railroad, 165 Mo. 612; Erwin v. Railroad, 94 Mo. App. 289; Bartlett v. Railroad, 148 Mo. 124; Howell v. Railroad, 149 Mo. App. 621. (2) The instruc-

tion given on behalf of plaintiff was erroneous. (a) It submitted the case on a theory not embraced in the pleading. (b) It failed to require the jury to find that plaintiff was in a position of danger and assumed this, or left it to be assumed, from the mere fact that plaintiff was dismounting from the train. (c) It departs from the petition in allowing negligence to be predicated on starting with a forward jerk, instead of a violent and unusual one as the petition alleged. (d) It erroneously assumed that the brakeman was controlling the movements of the train, whereas the conductor did that. These errors and wrong assumptions and omissions were not cured in the instruction by the use of the words "carelessly" and "negligently." Koontz v. Kaufman, 31 Mo. App. 420; Hinzman v. Railroad, 182 Mo. 623.

*Guthrie, Gamble & Street* for respondent.

(1) The motion for new trial contained no specific assignment of error on the giving or refusing of any instruction; and this leaves defendant without ground of complaint on account thereof. State v. Katz, 181 S. W. (Mo.) 425. (2) Instruction 1 is not erroneous in. permitting the jury to find that the brakeman controlled the train by signal to the extent of causing its forward start by the "high-ball" he gave to the engineer. (a) Because it is common knowledge that such acts are within the scope of a brakeman's duties. (b) Because the direct and circumstantial evidence that the brakeman gave the "high-ball" to the engineer, and what followed, warrant the conclusion that the brakeman did the thing which produced the result. (c) Because the failure of defendant to produce the evidence of the brakeman, or any of its trainmen, or to account for not doing so, raises a presumption that the brakeman by his "high-ball" signal did cause the jerk. Packing Co. v. Enzenperger, 77 Kan. 406; Kirby v. Talmadge, 160 U. S. 379; Kirk v. Middlebrook, 201 Mo. 245; Johnson v. Railroad, 150 Mo. App. 304; Powell v. Railroad, 255 Mo. 420; 3 Ency. Evidence, p. 81. (3) The court rightly refused to direct a verdict for defendant. (a) Because the evidence war-

ranted a finding that  the jerk, if not unusual, at least was unnecessary, and the product of a negligent failure to exercise the care which defendant owed to plaintiff as a passenger-employee.   McGee v. Mo. Pac. Ry. Co., 92 Mo. 208; Haas v. Railroad, 111 Mo. App. 706; St. Clair v. Railroad, 122 Mo. App. 519; Railroad v. Larussi, 161 Fed. 66; Mitchell v. Railroad, 132 Mo. App. 143; Tinkle v. Railroad, 212 Mo. 445.   (b) Because the negligence pleaded was the negligence proven.   Leslie v. Railroad, 88 Mo. 50; Ridenhour v. Cable Ry. Co., 102 Mo. 270; Cobb v. St. Ry. Co., 149 Mo. 135; Choquette v. So. El. Ry. Co., 152 Mo. 257; Duffy v. Transit Co., 104 Mo. App. 235; Senf v. Railroad, 112 Mo. App. 74; Nelson v. Met. St. Ry. Co., 113 Mo. App. 702; Harrison v. Lakenan, 189 Mo. 581; Smith v. Fordyce, 190 Mo. 1; Green v. Met. St. Ry. Co., 122 Mo. App. 647; Peck v. Traction Co., 131 Mo. App. 134; Shinn v. United Rys. Co., 248 Mo. 173; Knight v. Donnelly Bros., 131 Mo. App. 152; Crawford v. Stock Yards, 215 Mo. 394.   (c) Because the variance, if any, between the petition and the proof, did not amount to failure of proof within Sec. 2021, R. S. 1909, and defendant waived any question of lesser variance by demurring to plaintiff's evidence instead of objecting to being put upon its defense and filing the affidavit, in compliance with Sec. 1846, R. S. 1909. Mellor v. Mo. Pac. Ry. Co., 105 Mo. 455; Cobb v. St. Ry Co., 149 Mo. 135; Choquette v. So. El. Ry. Co., 152 Mo. 257; Fisher & Co. v. Realty Co., 159 Mo. 562; Franklin v. Ry. Co., 97 Mo. App. 473; Litton v. Ry. Co., 111 Mo. App. 140; Hensler v. Stix, 113 Mo. App. 162.   (4) The verdict was for the right party and should not be reversed in the absence of plainly prejudicial error.   R. S. 1909, secs. 1794, 1831, 1846, 1847, 1850, 1865, 2021, 2082, 2119; Noble v. Blount, 77 Mo. 235; Sherwood v. Railroad, 132 Mo. 339; Barkley v. Cemetery Assn., 153 Mo. 300; King v. King, 155 Mo. 406; Bragg v. Railroad, 192 Mo. 331; Green v. Terminal Assn., 211 Mo. 18; Trainer v. Mining Co, 243 Mo. 359; Wicecarver v. Ins. Co., 137 Mo. App. 247; Shinn v. United Rys. Co., 248 Mo. 173.   (5) The abstract of the record proper does not show  when the motion for new

trial was filed, and hence no error in the giving or refusing of instructions is available to defendant. Harding v. Bedoll, 202 Mo. 625; R. S. 1909, sec. 2025.

GRAVES, C. J.—This is an action for personal injuries wherein the damages are alleged to be $25,000.

The action is predicated on the relationship of master and servant, and not upon the relationship of passenger and carrier. It is also predicated upon certain Kansas statutes relating to masters and servants, which are specifically pleaded. It stands admitted in the record that defendant is an interstate carrier. After specifically pleading the Kansas statutes, and invoking them as the foundation for his right of recovery, the petition then proceeds, as follows:

"On May 2, 1912, in said town of Quenemo, while plaintiff, in defendant's service, was dismounting from one of defendant's trains, said train was suddenly started forward with a violent and unusual jerk, whereby plaintiff was thrown down and run over by said train, and his left leg destroyed, thereby causing plaintiff great suffering, loss of earnings and earning power, and putting plaintiff to an expense of not less than two hundred and fifty dollars for surgical and medical attendance, nurse hire and medicine in endeavoring to be cured of his injuries.

"Said injuries are permanent, and ever since their infliction upon plaintiff have caused him great suffering which will continue so long as plaintiff lives. Said injuries were produced by defendant's negligence.

"Said negligence of defendant was in that defendant, through its agents and servants in charge of said train, carelessly and negligently caused the same to start forward with a sudden jerk, whereby the results aforesaid were produced, and in the further fact that defendant after it could, by ordinary care, have known, and did know, of plaintiff's danger, still could and should have avoided injuring plaintiff by refraining from doing the things which it is above alleged defendant did, and by

stopping said train after it knew that plaintiff had been thrown down.

"By reason of the facts aforesaid plaintiff has been damaged in the sum of twenty-five thousand dollars.

"Wherefore, plaintiff prays judgment against the defendant in the sum of twenty-five thousand dollars, with costs of suit."

The divisional opinion correctly outlines the further facts, thus:

"The plaintiff at the time of his injury was employed by defendant to post signs on gates opening on defendant's right of way. He was directed to post these signs along the right of way of defendant's road between the towns of Quenemo and Osage City in the State of Kansas. He went to the conductor of a through freight train at Ottawa and asked permission to ride thereon with his tools and material to the town of Quenemo. Permission was given, but he was informed that the train would not stop at Quenemo; but at plaintiff's request the conductor said he would slow down there to enable plaintiff to get off. A bundle of signs and a number of tools were placed on a flat car in the train and plaintiff was told that he could ride thereon. He did so, and while *en route* engaged in conversation with a brakeman who informed him that he thought the train would stop at Quenemo to take water. When the train neared that town it slowed down, as the conductor had informed plaintiff would be done, and the latter threw the gate signs and a bundle of wire off of the flat car, and gathered up his tools and dinner bucket and proceeded to climb down the stirrup of the car so as to alight when the train stopped at the water tank, if it did so. In one hand he held a dinner bucket, and in the other a brace, bit and clam hammer. While he was in this position the brakeman hallooed at him several times to get off and motioned to him with his hand to the same effect. He did not do so, and the brakeman signaled the engineer to increase the speed of the train. As a result, plaintiff, in attempting to alight, fell under the wheels and one of his legs was so injured that amputation became neces-

sary. The testimony, which is that of plaintiff alone, is definite that he was not attempting to jump off the train, but that he fell off of same.

"The defendant offered no evidence on the ground that the negligence charged in the petition was not established."

The case was submitted to the jury on the following instruction for plaintiff:

"If you find and believe from the evidence that on or about the 12th day of May, 1912, the plaintiff was an employee of the defendant, and, as such, was dismounting from one of defendant's trains, and that, while so dismounting, if he was, his position was known to another of defendant's employees controlling the movements of such train by signals, and that such other employee, so knowing, if he did, plaintiff's position, negligently by a signal caused said train to be started forward with a forward jerk, and that as a direct result of such forward jerk, if any, plaintiff was thrown down and under said train, and thereby injured, then your verdict should be for plaintiff.

"Ordinary care is that degree and kind of care ordinarily exercised by an ordinarily prudent person under the same or similar circumstances. Negligence is the failure to exercise ordinary care."

It will be observed that the instruction is predicated upon the relation of master and servant.

Going back to the pleadings, it should be stated that the answer was (1) a general denial, (2) plea of contributory negligence and (3) assumption of risk.

Defendant offered no evidence, but offered a demurrer to the evidence, and other instructions, after the overruling of the demurrer. For the defendant the court gave the following instructions, number 2 and 6.

"2. The court instructs the jury that the plaintiff cannot recover in this case on the ground that defendant was guilty of negligence in that the brakeman ordered or directed plaintiff to get off the moving train.

"6. The court instructs the jury that there is not sufficient evidence in this case to prove that defendant

after it knew or by exercise of ordinary care could have known that plaintiff had fallen to the ground could have stopped the train and avoided injuring him.''

The court refused to give instructions numbered 1, 3, 4, 5, 7 and 8 asked by defendant.

Of its own motion, the court gave instructions C-1, C-2 and C-3, the first two of which read:

''C-1. The court instructs the jury that there is not sufficient evidence to warrant the jury in finding that the jerk, following the go-ahead signal, was an unusual jerk.

''C-2. The court instructs the jury that if they find and believe from the evidence in this case that the plaintiff's conduct in being in the position in which he was at the time the injury in question occurred, was negligence upon his part, as negligence is defined in other instructions herein, you must consider such negligence, if any, not as a bar to plaintiff's recovery, but you shall diminish the damages to which the plaintiff otherwise would be entitled, if any, in proportion to the amount of negligence, if any, attributable to the plaintiff.''

Instruction C-3 was a formal one telling the jury that nine of them might find a verdict, and giving them forms for a verdict. Exceptions were duly saved in the usual form as to the giving and refusing of instructions.

The jury returned a verdict for $12,500, which by *remittitur* was reduced to $10,000, and from a judgment for said $10,000 the defendant has appealed.

The motion for new trial is voluminous, but grounds 4, 5, 7, 10, 11, 12, 13 and 14 thereof read:

''4. Because the court erred in overruling defendant's demurrer to the evidence interposed at the close of plaintiff's evidence.

''5. Because the court erred in refusing to give defendant's instruction interposed at the close of plaintiff's evidence directing the jury to return a verdict for the defendant.

''7. Because the court erred in refusing to peremptorily direct the jury to return a verdict in favor of the defendant at the close of all the evidence.

"10. Because the court erred in refusing to give each and all the instructions requested by the defendant, which it did refuse to give.

"11. Because the court erred in giving each and every instruction which it did give at the request of plaintiff and on plaintiff's behalf. Such instructions and each of them were erroneous and defective.

"12. Because the court erred in each and all of the instructions given by the court of its own motion.

"13. Because the court erred in refusing to give proper and legal instructions requested by the defendant.

"14. Because the court erred in modifying proper and legal instructions requested by defendant and giving said instructions in a modified form."

Points made and other applicable facts will be noted in the course of the opinion.

I. We are met with the contention, made by counsel for plaintiff, that the motion for new trial in the court *nisi* is not sufficiently specific to authorize this court to review the alleged errors in the giving and refusing of instructions. We have been flooded with briefs *amicus curiae* upon this question. One of these numerous briefs is signed by 36 individuals and firms. The line-up would appear to be that counsel representing appellants in cases pending here or in other appellate courts, are urging the view taken by appellant here, whilst counsel representing appellees in cases pending here and in other appellate courts have come to the rescue of appellee in this case. Friends of the court are therefore upon both sides of the question, and the court is required not only to determine the question as between the appellant and appellee in the instant case, but also to reconcile (a thing impossible) the conflicting views of its own friends. The court is left in a sorry plight so far as its friends are concerned. If we count these friends by numbers and upon that decide the case, we would perhaps, from the briefs filed, have to decide the dispute in favor of the appellee in the case at

*Motion for New Trial: Specific Assignment.*

bar. But where our friends are so conflicting in their views as to the duty of the court, the safer plan is to take up the question in issue between appellant and appellee in the instant case, and decide that matter upon the law as we see it, and let the matter go. To our many friends upon both sides we are deeply grateful for suggestions made, in the briefs, and we acknowledge that such have thrown much light upon the question. We only regret that our friends, in real friendly spirit, could not have gotten more nearly together. We did not anticipate that they would however, when we realize that each set were viewing the question through different colored optics.

With the view that we have of this case we might pass upon the question urged, by suggesting that most certainly the question of the court's refusal of a demurrer to the testimony is sufficiently raised and preserved in the motion for new trial, but to settle the practice, we deem it best to go further. Not solely to settle the practice, but further because the question is in this case, the contention being that the demurrer to the evidence, being an instruction, falls under the same ban as other instructions. The question therefore is, are these instructions (including the demurrer to the evidence) before us for review, under the motion for new trial *nisi?* We think they are.

In the course of the several briefs we have our attention called to these statutes. In article 5 of chapter 21, Revised Statutes 1909 (which article relates to "Pleadings"), we find section 1841, which reads:

"All motions shall be accompanied by a written specification of the reasons upon which they are founded; and no reason not so specified shall be urged in support of the motion."

In article 15 of chapter 21, Revised Statutes 1909 (which article relates "New Trials, Arrests of Judgment and Bills of Exceptions"), we find section 2025, which reads:

"All motions for new trials and in arrest of judgment shall be made within four days after the trial, if the term

shall so long continue; and if not, then before the end of the term.''

In article 16 of chapter 21, Revised Statutes 1909 (which article relates to ''Appeals and Writs of Error''), we find section 2081, which reads:

''No exceptions shall be taken in an appeal or writ of error to any proceedings in the circuit court, except such as shall have been expressly decided by such court.''

Chapter 21 is our general code of civil procedure. Each article is devoted to a separate and distinct subject-matter. The subject-matter of article 5, in which article appears section 1841, supra, is ''Pleadings.'' The whole article is devoted to this subject. In our judgment section 1841, supra, must be construed in the light of its surroundings. It is a part of the article on pleadings, and evidently refers to motions of all kinds which are of themselves in the nature of a pleading, or which attack a pleading. It has always been so located in our civil code. We do not think that the lawmakers ever had in mind motions for new trial in the enactment of this section, when its location in our civil code is considered. If a motion is made to strike out an answer or a part of an answer, such motion must specify the reasons therefor, and no reason not thus specified shall be considered by the court.

If a motion strikes at the petition, it must likewise be specific, in that it must assign the reason for the motion. There are other motions in the nature of pleadings, or striking at pleadings, which might be enumerated, but the above suffice to illustrate our view, and that view is that such section has no reference whatever to motions for new trials.

That the motions contemplated by section 1841, is of the character we claim, and not motions for new trial, is further sustained by the section which follows it, i. e., section 1842, which reads:

''Motions in a cause filed in term shall be filed at least one day before they may be argued or determined.''

We have construed this latter section in Eddie v. Eddie, 138 Mo. l. c. 607, and held that a motion for the

allowance of an attorneys' fee in a partition suit, did not fall within the purview of this section, which required it to lay over for one day. Section 1842 evidently relates to the same motions referred to in section 1841.

When the surroundings of section 1841 are considered, we are firmly of the opinion that it has no reference to motions for new trial. The subject-matter of article 15 of chapter 21 is new trials, and the only section in that article pertaining to motions for new trial is section 2025, supra, and this says nothing about the contents of such motions. The whole controversy is disposed of by the foregoing ruling, but inasmuch as some of our opinions indicate that this section does cover motions for new trial, we will discuss it further in the next paragraph.

II.   As indicated above there are cases in which it is held that our present statute, section 1841, has application to motions for new trial. [Polski v. City of St. Louis, 264 Mo. 458: Carver v. Thornhill, 53 Mo. l. c. 286; Sweet v. Maupin, 65 Mo. l. c. 68.]

**Decisions on Sufficiency of Motion for New Trial.**

The latter two cases discuss section 48 of article 5, 2 Wagner's Statutes, p. 1021. Sections 48 and 49, 2 Wagner's Statutes, are the same as sections 1841 and 1842 of Revised Statutes 1909, supra. Article 5 of Wagner's Statutes, like article 5 of chapter 21 of Revised Statutes 1909, relates solely to "Pleadings and the Rules of Pleadings." Motions for new trials in Wagner's Statutes are treated of in article 12, 2 Wagner's Statutes, sections 1 to 6 inclusive, pp. 1058 and 1059.

In our judgment the court, in the two cases last cited above, overlooked the fact that the section they were discussing was under the subject of pleadings and referred solely to motions which struck at pleadings or were in the nature of pleadings. In the Polski case, supra, Judge Brown, without an analysis of the code provisions, simply reannounced what had been said in the two previous cases. They have all overlooked the fact that when the Civil Code took up the subject-matter of new

trials and motions for new trials, not a word was said as to the form or substance of such motion. But this is sufficient on this line.

Respondent in the case at bar relies upon this Polski case, and the cases upon which that opinion is based. We purpose a discussion of our own cases, and not those of the courts of appeals. We further purpose a discussion of the Civil Code and not the Criminal Code and the cases based upon the Criminal Code. This because the Criminal Code has a section prescribing the contents of a motion for new trial. [Sec. 5285, R. S. 1909.] In our view of the law there is an absence of such a provision in the Civil Code on this subject.

III. But granting that section 1841 is applicable to motions for new trial, the cases relied upon do not cover the case. Those cases are not cases discussing the insufficiency of an assignment of error in the motion for new trial, but are cases discussing the insuffi-

General Assignment Sufficient.

ciency of the motion because of the absence of an assignment of error to cover the alleged error urged in the appellate court. In the Polski case, Judge BROWN sets out the assignment or grounds of error in the motion for new trial; and they are just as general as they could be, but he does not condemn those assignments as being insufficient. He simply says (and rightfully so) that there was no assignment of error in the motion covering the error urged in the brief before this court.

In addition to the two early cases in 53rd and 65th Missouri Reports, supra, he cites the opinion of Judge LAMM, in Maplegreen Co. v. Trust Co., 237 Mo. l. c. 364. In the Maplegreen Company case the motion for new trial was just as general as the motion in the case now before us. Judge LAMM did not condemn this motion because the assignment of errors were insufficient, but what he did do was to say that the motion did not contain *at all* an assignment of error, for the alleged error urged in this court. Here is what he says:

"Attending to the motion for a new trial, it would be a most strained and unnatural construction on its

language to find therein any reference whatever to exceptions to the report of the referee or any complaint based on error in overruling those exceptions. The language of that motion fell from learned attorneys. They must be held to use words with precision and mean what they say—not what they do not say. When they use words well known to jurisprudence and well understood as filling certain offices, we are not permitted to give those words a loose, colloquial meaning, but define them *secundum artem*. In that motion they deal with 'verdicts,' the admission and exclusion of 'evidence,' 'demurrers,' 'declarations of law' and 'damages'—each of these terms has a well defined meaning in law. They complain therein of the rulings of the court and referee with regard to, those matters, but nowhere do they complain of the ruling of the court upon the exceptions to the referee's report. It matters not that there are no 'verdicts' or 'declarations of law' in equity suits, and there are none here that we can find. Nor are there any 'demurrers' in this record. The argument runs this way: As there is nothing to which those complaints can apply, therefore, they should be given some vitality and held to apply to the exceptions to the referee's report and to the action of the court in overruling them. But we decline to follow the lead of that argument. It would lead to dangerous and unheard of results, and play havoc with all certainty and precision of construction.

"In this condition of things, although counsel may not have intended to waive those exceptions or waive their complaint of the court in overruling them, yet they do that very thing by pretermitting all reference thereto in the motion for a new trial.

"We have so lately been over this matter in State ex rel. v. Woods, 234 Mo. 16, that further exposition is out of place. Other authorities will appear in plaintiff's brief, which the inquiring mind may consult."

The case referred to by our late Brother LAMM, is an opinion by the writer, and in State ex rel. v. Woods, 234 Mo. l. c. 25, we then said:

"We have gone thus far in outlining the law to the end that we might discuss the serious point in this record. The bill of exceptions in this case preserves the exceptions and the ruling thereon. It shows that the defendants excepted to the ruling upon their exceptions. We also find a motion for new trial properly preserved, and an exception to the action of the court in its ruling thereon. The trouble, however, lies in the motion itself. This motion nowhere charges the court with error in overruling the exceptions to the report of the referee. It contains some eight grounds, but not one of them mentions the action of the court upon the defendants' exceptions to the report of the referee. The nearest to such a question is the second ground, which reads: 'Because the court erred in approving the report of the referee filed in said cause and rendering judgment in accordance with the report of said referee.'

"Nowhere is it charged in the motion that the court erred in overruling defendants' exceptions to the referee's report. What we have quoted from the motion for new trial, could as well have appeared in a motion for new trial where no exceptions had been filed, as in a case where exceptions had been filed. Yet, if no exceptions had been filed, the motion would be unavailing. The question therefore is, can we consider the exceptions to the referee's report, where the motion for new trial fails to assign the overruling of such exceptions as error? We think not. When we consider that in referee cases the cause is heard *nisi* upon the report and the exceptions filed thereto, and further consider that the litigant must not only except to the action of the trial court in overruling his exceptions to the referee's report, but must further by his motion for new trial call the court's attention to the alleged error in overruling such exception, it is clear that there is nothing for review in this case, except the record proper, and this is without error."

So that in all those cases, the question was not as to the sufficiency of the assignments in the motion for new trial, but was as to the utter absence of an assign-

ment of error in the motions to cover the assignment of error in this court.   The same is true in Carver v. Thornhill, 53 Mo. l. c. 285.   In that case VORIES, J., said:

"The defendant offered no evidence on his part.   The court gave judgment for the plaintiff.   The defendant filed a motion for a new trial, and set forth as the grounds upon which said motion was founded, the following:

"1st.   Because the said verdict and judgment were against the evidence.

"2nd.   Because the verdict and judgment are against the law.

"3rd.   Because the verdict and judgment are against the law and the evidence.

"4th.   Because the verdict and judgment were rendered for the plaintiffs, when the same should have been for the defendant.

"This motion was also overruled, and the defendant again excepted and has appealed to this court.

"The only objection made in this court to the proceedings and judgment of the Johnson Court of Common Pleas is, *that the said court upon the trial of the cause received and heard improper evidence, which ought to have been excluded.*

"It will be seen that no such ground of objection was set forth or brought to the attention of the court in the motion filed by the defendant for a new trial.   The only grounds of objection set forth in the motion for a new trial are, that the verdict is against the law and the evidence, and is for the wrong party.   *No question is made in the motion as to the admission or rejection of evidence.*"

The same is true as to the case of Sweet v. Maupin, 65 Mo. 65.   And it might be said, judging from the arguments in the briefs, that this case is the "Sweet" morsel upon which respondent and one branch of our friends chiefly rely.   But there is no substance upon which they can place reliance.   There SHERWOOD, C. J., was not condemning the grounds of the motion as being insufficient, but like all the other cases, he was

condemning the motion for new trial because it did not contain an assignment of error which was broad enough to cover the assignment urged in this court. In that case he says:

"A more serious objection is made to the verdict, which was for $1,197.16, on the ground that the finding is a general one, and not a finding on each count of the petition. For repeated decisions of this court have settled the matter that when the attention of the lower court has been called to a defect of this sort, by appropriate motion, a reversal must occur, if such motion be overruled. But on examination of the motion for new trial, in the present instance, it will be found that, although the ground referred to is distinctly set out in the assignment of errors at general term, yet that the motion does not distinctly specify the ground now urged, the nearest approach to such specifications being the fourth clause, that 'the verdict of the jury is not *warranted by the issues in the case, and is incorrect and informal.*' Our statute expressly requires that motions shall distinctly specify the ground whereon they are based. [2 Wagner's Stat., p. 1,021, sec. 48.] The object of this is to call the attention of the lower court to the point complained of. For mere matters of exception cannot be noticed here except when 'expressly decided' by the lower court. [Id. 106, sec. 32; State v. Rucker, 59 Mo. 17; Brady v. Connelly, 52 Mo. 19; Chapman v. White, 52 Mo. 179; Burns v. Whelan, 52 Mo. 520; Carver v. Thornhill, 53 Mo. 283.] We hardly think, in the light of these statutory provisions and decisions, the motion before us specified with sufficient distinctness the ground now relied on, that *the verdict did not contain a special finding on each count.*" The italics are ours.

We are also cited to St. Joseph v. Life Ins. Co., 183 Mo. l. c. 7, and Shaw v. Goldman, 183 Mo. l. c. 462. These cases and many others in this State announce the rule that if the unconstitutionality of a law or ordinance is relied upon in a case, the provisions of the Constitution alleged to be violated must be specifically pointed out

to the trial court, and to this court. That rule in no wise conflicts with our views in this case.

To those of us who have grown gray in the practice and administration of the law, it has always been deemed sufficient to make a general assignment of error in a motion for new trial both as to the reception and exclusion of evidence, and the giving and refusal of instructions. In the very cases relied upon by respondents, we find the motions just as general as the motion at bar, and this court never said that the assignment of error in the motions were insufficient, but only said that the motions failed to contain an assignment of error (either general or specific) which would cover the assignment urged in the appellate court.

In Collier v. Lead Co., 208 Mo. l. c. 256, we said:

"Considering the first objection herein above stated. The motion for a new trial is general in its terms. It is short and we will quote it. The grounds assigned therein are as follows:

" 'That the findings should be for plaintiffs instead of defendants. That the finding is unsupported by the evidence. That the verdict is for the wrong party. That the court erred in admitting over plaintiffs' objection illegal, incompetent and improper evidence on the part of the defendants. That under the law and the evidence the findings should have been for the plaintiffs.'

"It is not necessary to review the many cases cited from other jurisdictions. The practice in this State has never, of recent years, required the motion for new trial to point out specifically the evidence excluded or evidence admitted, alleged to have been erroneously excluded or admitted. Under our practice it is sufficient, if at the time of the exclusion or admission of such evidence, proper objections were made and exceptions saved, and this is followed by a general assignment of error in 'this regard in the motion for new trial. Such have been the last expressions of this court, and we see no good reason for a further review of the question.

"In State v. Barrington, 198 Mo. l. c. 76, this court, In Banc, adopted the opinion of Fox, J., in Division, and in doing so, we there said: 'Upon this complaint the Attorney-General insists that the ground of defendant's motion for a new trial, that is, that "the court erred in admitting illegal, irrelevant, incompetent and immaterial testimony," does not cover or exclude the point of improper cross-examination of defendant. Upon this proposition we will say that, if the objections at the trial were sufficiently specific to notify the trial court at the time of the nature and character of the objections and the reasons for them, the general assignment in the motion for new trial, that the court improperly admitted illegal, incompetent and irrelevant testimony, would properly preserve the point of improper cross-examination for review in this court.'

"Again, in State v. Noland, 111 Mo. l. c. 492, this court said: 'The motion for a new trial does not specify the exclusion of this particular evidence, but assigns generally as error that "the court excluded from the jury proper, competent and relevant testimony offered by the defendant." This was sufficient. It has been the practice of this court from its organization. Nothing more definite has ever been required. A different ruling would unsettle the practice and work great injustice. The objections to testimony must be specific to be available in the appellate courts. These exceptions thus made are saved at the time, and the trial court's attention specifically called to its rulings, and no injustice is done the opposite side or the court by not incumbering the motion for new trial with these matters a second time. We adhere strictly to the rule requiring specific objection to testimony to be made at the time it is offered, but we do not think any good would be subserved by requiring the specific objections to be again repeated in the motion for a new trial.'

"There may be cases where the language used, taken apart from the real situation presented by the case, might indicate a different rule, but when we read these cases thoroughly, the language indulged in by the court

will find justification in the particular record, without infringing upon the rule announced in the Noland case, supra.

"We announce again that if objections are made and exceptions saved to the action of the trial court in the admission or exclusion of testimony, then the general assignment in the motion is sufficient."

In Stid v. Ry. Co., 236 Mo. 1. c. 397, this court again said:

"In a case of this moment it behooves the court to pass judgment with full consideration. The motion for new trial is on the blanket order rather than one specific in terms. This practice we have never condemned, but rather encouraged. Such motion need only be in general terms and need not point out specifically the evidence admitted or excluded, or the instructions given or refused. If the motion recites, as does this one, that the court erred 'in giving each of the instructions given at the request of the plaintiff,' the instructions of plaintiff for all points and purposes are here for review.

"So, too, if the motion recites that the court erred in admitting incompetent evidence for plaintiff and also erred in refusing to admit competent evidence for the defendant, such questions are for review in the appellate court."

Nor is there any injustice to a trial court in applying this rule as to instructions as well as to evidence. The giving of an instruction is the act of the court. The court is declaring the law of the case. The parties cannot do that. They may suggest to the court what they think to be the law, but the court, with his knowledge of law, declares what the law of the case is. It is the product of the mind of the court, and when the motion for a new trial charges that the court erred as to the giving or refusing of instructions, it but calls attention to the things which the court has done or has failed to do. It sufficiently advises the court that he has erred in his judgment of the law of the case, and it is not necessary to explain in such motion why the court

has thus erred. Of course the motion might recite that the court erred in giving a certain instruction, because the giving of it, under the facts of the case, was error under the law as declared in appellate opinions, citing the same, but this has never been the idea of a motion for new trial in these many years, since the adoption of the Code of Civil Procedure.

To sustain the contention of counsel for defendant would enable us to clear our docket of cases within a very short period, but the merits of the cases would be undetermined. We cannot lend our judgment to views so radical. To use the language of GANTT, P. J., in State v. Noland, 111 Mo. l. c. 492:

"The motion for a new trial does not specify the exclusion of this particular evidence, but assigns generally as error that 'the court excluded from the jury proper, competent and relevant testimony offered by the defendant.' This was sufficient. *It has been the practice of this court from its organization. Nothing more definite has ever been required. A different ruling would unsettle the practice and work great injustice.*" The italics are ours.

We only desire to substitute "the giving and refusing of instructions" for the exclusion of evidence in the excerpt above.

Under the law of this State the motion for a new trial in the case at bar is sufficient in form to bring before this court for review all the instructions given and all the instructions refused. We desire to reiterate what we said in the Stid case, supra.

IV. This brings us to the merits of this case, and to our minds it is one of easy disposition. As stated, the action is one grounded upon the relation of master and servant. The thing charged as being productive of the injury to plaintiff is, that "said train was suddenly started forward *with a violent and unusual jerk,* whereby plaintiff was thrown down and run over by said train, and his left leg destroyed," etc.

*Unusual Jerk*

Plaintiff charges that his injury was due to a "violent and unusual jerk," and the evidence fails to show that what happened was more than usually occurs in the operation of freight trains. In other words, the negligent act charged was not proven. The trial court so declared, for by its instruction C-1 given of its own motion, it is said: "The court instructs the jury that there is not sufficient evidence to warrant the jury in finding that the jerk, following the go-ahead signal, was an unusual jerk."

The evidence fully justifies the giving of this instruction. Plaintiff knew he was on a freight train and he knew that it was not going to stop, but would only slacken up and start up again. Unless something more than the usual jerk occurred there was no negligence upon the part of the defendant. In other words, if the thing which happened was not unusual in the operation of freight trains there was no negligence. This doctrine is so fully discussed in our cases that a citation of two or three will suffice. [Wait v. Railroad, 165 Mo. 612; Hedrick v. Railroad, 195 Mo. 104.]

The plaintiff having planted his right to recovery upon "a violent and unusual jerk" must show such or fail. He fails to show the act of negligence pleaded, and the demurrer to the evidence offered by defendant should have been sustained. The rule as between passenger and carrier can not be invoked because plaintiff has not so sued.

The judgment *nisi* is reversed. *Woodson, Faris* and *Blair, JJ.,* concur in paragraphs three and four, and in the result; *Revelle, J.,* concurs in paragraph 4, and in the result, and concurs in the separate concurring opinion of *Bond, J.; Bond, J.,* concurs in separate opinion; *Walker, J.,* dissents in separate opinion.

BOND, J. (concurring)—I am unable to agree to the learned discussion in the majority opinion to the effect that section 1841, Revised Statutes 1909, has no reference to the contents of a motion for a new trial. This section, in express terms, is applicable to "all motions"

and requires that they "shall be accompanied by writ-
ten specifications of the reasons upon which they are
founded," etc., and I do not think a statute so all-em-
bracing in its language can be logically limited only
to certain motions filed during the trial of a law-suit
which are addressed to pleadings. In judging the suffi-
ciency of motions for new trial by the rule fixed by that
statute, full effect should be given to it as it has been
interpreted and construed in the unbroken line of pre-
cedents cited in the concluding portion of the second
paragraph of the learned majority opinion. These have
held, and such has been the consensus of opinion at the
bar, that the "specification of reasons" in the motion
for new trial in the present case was sufficient to bring
up for review the action of the court in its refusal of
the instructions requested by respondent for a peremp-
tory verdict or other instructions requested by it, and,
also, in the giving of instructions at the request of plain-
tiff. Defendant excepted at the time in both instances
to the action of the court, and the reference shown in
its motion for new trial to the adverse rulings of the
court in respect of such instructions, was a sufficient
compliance, under the decisions of this court, with the
terms of the statute requiring "a written specification
of reasons."

Hence I concur only in the result reached in the learn-
ed majority opinion. *Revelle, J.*, concurs in this opin-
ion.

WALKER, J. (dissenting)—I concur in the majority
opinion in its holding that the plaintiff cannot base his
cause of action upon one theory, try the issue thereon,
and recover on appeal upon another and a different
theory as to the relationship existing between him and
the defendant at the time of the accident.

I do not concur in the holding that section 1841, Re-
vised Statutes 1909, should not be construed and applied
according to its unmistakable meaning. The language
of this section is clear, definite and conclusive. There
has heretofore never been a question as to its being ap-

plicable to motions for a new trial. Its history amply attests the fact that it is so applicable. As originally enacted (R. S. 1835, p. 469) it read as follows:

"All motions for new trials and in arrest of judgment shall be made within four days after the trial, if the term shall so long continue, and if not, then before the end of the term, and every such motion shall be accompanied by a written specification of the reasons upon which it is founded."

In the Revision of 1845, which incidentally may be said to be one of the best revisions that has been made of our laws, in which the Code of Civil Procedure was materially amplified and the phraseology of many of the sections changed, what is now section 1841, Revised Statutes 1909, was divided into two sections, which read as follows:

"Sec. 1. All motions for new trials and in arrest of judgment shall be made within four days after the trial, if the term shall continue so long, and if not, then before the end of the term.

"Sec. 2. Every such motion shall be accompanied by a written specification of the reasons upon which it is founded." [R. S. 1845, p. 829.]

In the revision of 1855 the code was still further amplified and many arbitrary changes were made in the arrangement of the articles and sections. Section 1, in regard to motions for new trials, in the Revision of 1845, appears in the Revision of 1855 as section 6 of article 13 of chapter 128. (2 R. S. 1855, p. 1286), and is in the same language as in the former revision; while section 2 of the Revision of 1845 above quoted is designated as section 27 of article 6 of chapter 128 of the Revision of 1855, which is entitled: "In Relation to Pleadings and the Rules of Pleadings," and reads as follows:

"Sec. 27. All motions shall be accompanied by a written specification of the reasons upon which they are founded; and no reason not so specified shall be urged in support of the motion." [R. S. 1855, p. 1235.]

It will be seen that the portion of this section fol-
lowing the word "founded" was added in this revision.
The phraseology and setting of the section as it ap-
pears here have not been changed in subsequent re-
visions. That the section has reference in a general
way to pleading, is true, because a motion is none
the less a part of the pleadings in the case than any other
paper filed therein [Bliss, Code Pl. (3 'Ed.), sec. 135]
except as to the distinguishing rule which prevents its
being incorporated into the record proper in making up
a transcript to perfect an appeal. The conclusion there-
fore reasonably follows that the section has reference
to all motions, filed for whatever purpose in a suit.
It is only by invoking the aid of judicial legislation
that the provisions of the section can be reasonably
limited to motions other than those for a new trial. It
must be admitted that many motions general in their
averments, of the character of the one under review,
have been held sufficient by this court, but this has been
due to loose construction and without regard to the
plain meaning of the statute, the purpose it was intend-
ed to effect, and in disregard of its origin. In this con-
nection it is not improper to say that the mere arbitrary
arrangement of a section of the code does not afford a
cardinal reason for its interpretation. It is at best but
a matter of minor consideration. The words, the text,
the subject-matter and the purpose intended to be effect-
ed by the section should be first considered in ascertain-
ing what it means. These having been considered, the
section should be construed according to its plain terms
without extrinsic aid. The correctness of this conclu-
sion has been attested wherever the origin and purpose
of the section has received considerate attention; where
it has not received this attention the result has been to
render motions for new trials mere drag nets to catch
and hold general assignments of error. Under this
loose construction, after the matter to be subsequently
complained of has passed without emphasis beyond the
purview of the trial court, the appellant is enabled,
from the *omnium gatherum* called a motion for a new

trial, to pick and choose such specific grounds of error as then seem most pregnant with possibilities of reversal, with its consequent delay and possible denial of justice. A construction of the section fraught with such results was not contemplated by the framers of our code. I therefore dissent from the majority opinion in so far as it holds that a motion for a new trial should not, with brief but reasonable particularity, specify the grounds upon which it is based.