OLLIE WELP v. BERNARD P. BOGY, Appellant.—8 S. W. (2d) 599.

Division One, July 3, 1928.

*Caulfield & Bartlett* for appellant.

674

*Brackman, Hausner & Versen* for respondent.

GANTT, J.—This is a suit for personal injuries, alleged to be the result of plaintiff having been struck by defendant's automobile. Verdict was for $7915.66, judgment accordingly, and defendant appealed.

The case has been in the Court of Appeals, and we shall appropriate, in part, the statement of facts as given in the opinion of that court (277 S. W. 601), as follows:

"This accident occurred at the intersection of Prairie, Cass and Easton avenues, in the city of St. Louis, on January 20, 1921, between 8:30 and nine o'clock P. M. Easton Avenue runs northwesterly

and Cass Avenue westwardly, while Prairie runs north and south. Easton and Cass avenues intersect, forming a wedge, the point of which is about 150 feet east of Prairie.

"Plaintiff's evidence tended to show that she and Mrs. Edith Fontana were waiting to board a westbound Wellston car. They were standing at the usual stopping place for westbound cars, such point being in the middle of Easton Avenue and opposite a yellow post which was on the south side of the street and twenty-five feet east of Prairie Avenue. Having observed a westbound car approaching, Mrs. Fontana stepped to one side and motioned for it to stop, at which time plaintiff was struck and did not regain consciousness until after she was removed to the hospital. Plaintiff herself had been looking continually toward the east and did not know what struck her, but her witnesses disclosed that an eastbound automobile (which later proved to be that of defendant), coming from the west on Easton on the eastbound car track and running at a speed of thirty-five or forty miles an hour, turned to the left towards Cass Avenue as it crossed Prairie and struck the plaintiff. This machine was stopped at a point twenty-five feet north of the westbound car track, and twenty-five or forty feet west of the point of the wedge made by the intersection of Cass and Easton avenues. Shortly thereafter the westbound street car came up to the corner and was also stopped. A crowd of people gathered around the automobile, and six or eight men lifted the rear end so that plaintiff, who was lying under the rear axle, might be extracted. There was considerable difficulty in getting her out, because her hair was twisted around the gearings.

"The plaintiff and her companion were standing in such a position that the light from a soft drink parlor on the northwest corner of Easton and Prairie avenues shown upon them. Because of the curve in the track, the headlight of the approaching Wellston car did not strike them. The lights of defendant's automobile were burning."

Defendant and his witnesses denied that his car struck plaintiff; that she was underneath his car, or that his car was lifted off of her body. Other facts may be noted.

I. Defendant contends that we should consider a statement of the plaintiff, in writing, made to the United Railways Company, with reference to an injury to plaintiff incident to a collision on April 6, 1926, between an automobile in which she was riding and a street car. Defendant filed a motion, with a copy of the statement attached, in this court, praying a consideration of the statement as newly-discovered evidence. On motion of plaintiff said motion and statement were stricken from the files.

This order stands, and the statement cannot be considered on this review.

II. The case was submitted on the charges of a violation of a speed ordinance, and that defendant negligently failed to exercise reasonable care to keep a watch for persons on the street waiting for a street car.

Plaintiff's Instruction No. 2 is as follows:

"The court instructs the jury that if you find and believe from the evidence that on the evening of January 20, 1921, the plaintiff was intending to board a westbound Wellston street car, and was standing at or about the usual waiting place for persons intending to board westbound Wellston street cars at the junction of Easton, Cass and Prairie avenues; and if you further find that the defendant was driving an automobile eastwardly on Easton Avenue, and drove same across Prairie Avenue into said junction of Easton, Cass and Prairie avenues, and that he ran said automobile against the plaintiff and knocked her down and dragged and injured her; and if you further find that the plaintiff was in the path of said automobile, and the defendant, at said time and place, *negligently failed to keep a reasonably vigilant watch for persons on the street*, and because of such failure, if any, did not see the plaintiff standing in the street and in danger of being struck by said automobile, if you so find, and that such failure, if any, of defendant to keep a reasonably vigilant watch was the direct cause of defendant running said automobile against plaintiff, if you so find, then your verdict must be for the plaintiff and against the defendant." (Italics ours.)

Defendant complains of this instruction in that the petition alleges that defendant "negligently and carelessly failed to exercise reasonable care to keep a watch for persons on the street;" whereas, the instruction submits negligent failure "to keep a reasonably vigilant watch for persons on the street."

It is insisted the use of the word "vigilant" broadened the issue as made by the pleadings and imposed upon defendant the duty of exercising a higher degree of care than the law required of him under the circumstances.

The collision occurred before the Act of 1921 (Laws 1921, 1 Ex. Sess., p. 91) went into effect; therefore it was the duty of defendant to exercise such care as a reasonably prudent person would exercise under the same or similar circumstances. At an intersection of streets heavily burdened with traffic of all kinds, ordinary care requires of one operating a motor vehicle a vigilant watch for persons on the street; whereas, a lesser degree of care is required at an intersection lightly burdened with traffic. The degree of care required is a ques-

tion for the jury. The word "vigilant" is qualified in the instruction by the word reasonably and does not as qualified require of defendant the highest degree of care or a fixed degree of care. A reasonably vigilant watch is the exercise of ordinary care under the same or similar circumstances. The expressions "reasonable care" and "ordinary care" are said to be interchangeable. [State ex rel. Grear v. Ellison, 182 S. W. l. c. 963.] While awkwardly drawn, the instruction was not prejudicial.

In addition, the evidence tenders no issue on the condition of traffic at the place of collision. All of the evidence tended to show the intersection was heavily burdened with traffic.

Defendant testified that he knew the location like a book; that there is a great deal of north-and-south automobile traffic on Prairie Avenue, but is more so on Easton Avenue than any other street; that there were a great many automobiles passing there all the time; that street cars were continually passing both ways, taking on and letting off passengers; that there was a decided curve in the car line at that point; that it was slick the night of the collision, and that he saw plainly one woman standing in the light in the street, thirty or forty feet east of Prairie Avenue, while he was in his car waiting west of said avenue. The error, if any, was harmless.

Attention is directed to the following cases: McKenzie v. Randolph, 257 S. W. 126; Smith v. Railroad, 126 Mo. App. 120, 103 S. W. 593; Heinzle v. Railroad, 182 Mo. 528, 81 S. W. 848. In those cases the instruction under consideration submitted a distinct and separate act of negligence not pleaded in the petition. They do not sustain defendant's contention, for the reason that in the instant case the question is one of degree and not of kind.

III. Defendant contends the verdict is excessive. Plaintiff was forty-seven years old. She was knocked unconscious by defendant's automobile and dragged fifty feet. When the automobile was stopped she was under the car with her hair wrapped around the gearings, and tufts of hair had been pulled from her head. The car had to be lifted to release her. She suffered internal injuries and innumerable cuts, bruises and abrasions on her head, body and limbs. Bones were broken, deformities created and nerves shattered permanently. She was in a hospital five weeks, and at the time of the trial was still in a very nervous condition. Other details as to her injuries are not necessary. The evidence considered, it must be held that the amount awarded is a modest sum for her injuries.

IV. Defendant contends (a) that plaintiff's attorney was guilty of misconduct during the cross-examination of the defendant and his witnesses. This complaint is not assigned as error in the motion for new trial, and must be put aside. (b) That the court erred in admitting incompetent, irrelevant and immaterial testimony over the objections of defendant. The defendant is not required to specify in the motion for a new trial the particular evidence referred to as incompetent, and this assignment is sufficient. [Wampler v. Railroad, 269 Mo. l. c. 475, 190 S. W. 908.]

Mrs. Ward and Mrs. Lancaster testified for defendant at the first trial. Defendant had subpoenas issued for them in the instant case and delivered to Masterson, process-server. Mrs. Lancaster was subpoenaed after defendant learned plaintiff had subpoenaed her. Mrs. Ward could not be located, and her testimony was read.

Plaintiff contended the defendant preferred to read their testimony at the former trial rather than have them submitted to a cross-examination before the jury.

Plaintiff's cross-examination of defendant, Masterson and Mrs. Lancaster was an effort to show bad faith on the part of defendant in having subpoenas issued for Mrs. Ward and Mrs. Lancaster. These witnesses were cross-examined concerning Masterson's diligence in serving the subpoenas. Masterson was called first, and defendant objected to this line of inquiry on the ground the testimony sought to be elicited was not material. The court overruled the objection on the promise of plaintiff's attorney that its materiality would develop later. Defendant excepted then and, as the examination continued, again objected and excepted, and the court again overruled the objection on the same promise. This line of inquiry continued throughout the cross-examination of these witnesses. Defendant made other objections, but saved no exceptions. At the close of all the evidence, on motion of defendant, that part of the cross-examination of Masterson with reference to diligence in serving the subpoenas was stricken out, for the reason the plaintiff's attorney did not keep his promise to show materiality.

In this state of the record we are limited to a review of the action of the court in permitting this line of inquiry of the witness Masterson. The testimony was not material. In view of the amount awarded, we are convinced the admission of the testimony relating to the diligence of the process-server and the defendant in procuring the attendance of these witnesses was not prejudicial.

The record considered, we hold the defendant had a fair trial and the judgment should be affirmed. It is so ordered. All concur.