Gary A. RYAN, Respondent,

v.

Paul PARKER, Appellant.

No. WD 43380.

Missouri Court of Appeals,
Western District.

June 18, 1991.

Norman I. Reichel, Kansas City, for appellant.

Douglass F. Noland, Kansas City, for respondent.

Before NUGENT, C.J., and KENNEDY, GAITAN and WASSERSTROM, JJ.

GAITAN, Judge.

Defendant appeals a judgment against him in a negligence action arising from a water skiing accident. Defendant/appellant alleges that the trial court erred in (I) submitting an invalid verdict director, (II) permitting testimony from respondent's expert on water safety and disallowing evidence of respondent's alcohol consumption on the day of the accident, and (III) not preventing or curing, *sua sponte*, allegedly improper closing argument by respondent's counsel. The judgment of the trial court is affirmed.

On July 3, 1987, the respondent was water skiing on Crystal Lake, located near Excelsior Springs, Missouri. The appellant was driving the motor boat that was towing respondent. As respondent was being towed, a large amount of slack developed in the ski-rope. Respondent gathered approximately fourteen to twenty feet of slack rope in his hands while the boat continued forward. When the boat pulled the rope taut, the rope became entangled in respondent's left hand and amputated his thumb below the knuckle. Respondent was taken to the hospital in Excelsior Springs, where he was admitted and treated by a local physician. As a result of his injuries, respondent suffered a permanent reduction in his ability to practice his trade of electrician, engage in certain recreational activities, and perform normal tasks requiring manual dexterity with his left hand. Respondent also incurred medical costs.

Respondent brought an action for personal injuries and a trial was held on March 13 and 14, 1990. The jury returned a verdict in favor of respondent and awarded $49,500.00 in damages. The jury also assessed 34% of the fault to respondent and 66% to appellant. It is from this jury verdict that appellant appeals.

The respondent has filed a motion with this court to dismiss appellant's appeal on the ground that appellant failed to make a

timely motion for new trial and thus nothing has been preserved for appeal. Appellant's response to this motion also presented the issue of whether his notice of appeal was timely. Before reaching the substantive issues of this appeal, we must resolve these two procedural issues: (1) Whether appellant's motion for new trial was timely filed under Rule 78.04; and (2) if we find the motion for new trial was not timely filed, was appellant's notice of appeal untimely via Rule 81.05? In analyzing these two issues, the relevant dates and events are as follows:

March 14, 1990—The jury verdict was decided.

March 20, 1990—The judgment entry reflecting the jury's verdict was entered in the trial court's docket sheet.

March 29, 1990—Respondent filed a motion for additur.

April 04, 1990—Appellant filed a motion for new trial.

May 10, 1990—Respondent's motion for additur is overruled.

May 18, 1990—Appellant filed a notice of appeal.

 "A motion for a new trial shall be filed *not later than fifteen days after the entry of the judgment on a jury verdict, which judgment shall be entered as of the date of the verdict....*" Rule 78.04. Appellant argues that the fifteen day limitation did not begin to run until March 20, when the judgment entry was entered on the docket sheet, and thus the motion for new trial was timely. Missouri law is clear, however, that the final jury verdict, and not the mere ministerial act of recording the judgment entry, triggers the *running* of the fifteen day time limitation. *Mosher v. Levering Investments, Inc.,* 806 S.W.2d 675, 675–77 (Mo.1991) (en banc).

In *Mosher,* the Missouri Supreme Court was faced with procedural facts nearly identical to those before this court. The jury verdict was returned on August 2, 1989. The judgment, however, was not signed by the court until August 7, 1989, and was not entered in the court file until September 11, 1989. *Id.* at 675–76.

In response to appellant's argument that the fifteen day limitation in Rule 78.04 did not begin to run until September 11, the court stated "[w]hether a formal judgment was entered after August 2 or not, the time for filing post-trial motions began to run on that date." *Id.* at 676. Under *Mosher,* there is no doubt in this case that the fifteen day period began to run on March 14, 1990, and expired on March 29, 1990. Appellant's motion for new trial, filed on April 4, 1990, was clearly untimely.

 The effect of this untimeliness is found in Rule 78.07. "[A]llegations of error to be preserved for appellate review must be included in a motion for a new trial...." As unpreserved allegations of error, our review, if granted, will be limited to a search for plain error. *See Mosher v. Levering Investments, Inc.,* 806 S.W.2d 675, 676–77 (Mo.1991) (en banc).

 The second procedural issue before us is whether appellant's notice of appeal was timely. Rule 81.04(a) allows a prospective appellant ten days after a judgment becomes final to file a notice of appeal. Obviously then, the focus of our analysis is determining when the judgment in this case became final. Rule 81.05(a) controls this determination:

[A] judgment becomes final at the expiration of thirty days after the entry of such judgment, if no timely motion for a new trial is filed ... In the event a motion for new trial is timely filed, the judgment becomes final at the expiration of ninety days after the filing of such motion or, if such motion is passed on at an earlier date, then at the date of disposition of said motion. Authorized after-trial motions shall be treated as, and as a part of, a new trial motion for the purpose of ascertaining the time within which an appeal must be taken....

Rule 81.05(a). As previously decided, there was no timely motion for new trial and, therefore, the judgment would become final thirty days after the verdict, or on April 13, 1990. Thus, the notice of appeal would have been due ten days later on April 23. The notice of appeal, filed on May 18, 1990, would have been untimely at this point.

Appellant argues, however, that respondent's motion for additur under Mo.Rev. Stat. § 537.068 (Supp.1990), filed on March 29, 1990, was an "authorized after-trial motion" as that term is used in Rule 81.05(a). If this be so, then the judgment would not become final until the expiration of ninety days or the trial court ruled on the motion. In this case, the trial court ruled on the motion for additur on May 10, 1990. Therefore, appellant's May 18th filing of the notice of appeal would be within the ten day limitation contained in 81.04(a).

We hold that a motion for additur is "authorized" by Mo.Rev.Stat. § 537.068 (Supp.1990). Further, additur is obviously available only through an after-trial motion. Therefore, under the express language of Rule 81.05(a), respondent's motion for additur will be treated like a motion for new trial to the extent that it forestalled the finality of the judgment until the trial court overruled the motion on May 10, 1990. Thus, appellant's notice of appeal was timely. Because of appellant's failure, however, to file a timely motion for new trial, we will review only for plain error. Plain error exists where uncorrected errors would create "manifest injustice or [a] miscarriage of justice...." Rule 84.13(c). Respondent's motion to dismiss the appeal is overruled and we will review appellant's allegations for plain error.

## I.

By virtue of the facts in this case, the verdict director submitted to the jury was a non-MAI instruction.[1] Appellant now challenges the validity of the submitted verdict director, claiming that it does not reflect the substantive law and that it contains facts which could confuse the jury.

■ The governing principle in evaluating a non-MAI instruction is whether the instruction clearly communicated a correct characterization of the applicable substantive law. *Massey–Ferguson Credit Corp. v. Black,* 764 S.W.2d 137, 144 (Mo.App. 1989). The heart of the controversy, and our evaluation, is defining the applicable substantive law for negligence involving motor boat operators towing water skiers.

■ Appellant argues that the applicable substantive law is found, exclusively, in Mo.Rev.Stat. § 306.120.1 (1986).[2] Via Mo. Rev.Stat. § 306.210 (1986), it is a misdemeanor to violate § 306.120.1 by towing a skier without either designating a spotter or having an approved rear-view mirror through which the driver can observe the skier's progress. The gist of appellant's argument is that the verdict director incorrectly allowed the jury to find him negligent despite his compliance with § 306.-120.1; that is, despite the fact that appellant had an approved rear-view ski mirror on his boat. Appellant's argument would be tenable if § 306.120 was the entirety of substantive negligence law regarding towing water skiers. It is not, however.

■ The substantive negligence law applicable to motor boat operation is closely analogous to that of negligent automobile operation: Both evolved from the same common law doctrine and both have seen

---

1. The verdict director stated in relevant part:
 In your verdict you must assess a percentage of fault to defendant whether or not plaintiff was partly at fault if you believe:
 First, either:
 defendant operated his boat in such a manner as to cause excessive slack in the ski rope and failed to stop or slow the boat, or
 defendant failed to observe the progress of the plaintiff through the rearview mirror as he was skiing, or
 defendant failed to designate a spotter in the boat to observe the progress of the plaintiff as he was skiing, and
 Second, defendant, in any one or more of the respects submitted in Paragraph First, was thereby negligent, and

Third, such negligence directly caused or directly contributed to cause damage to plaintiff.

2. Section 306.120, entitled "Towing persons on skis or surfboard, regulations," provides:
 1. No person shall operate a vessel on any waters of this state for towing a person or persons on water skis, or a surfboard, or similar device unless there is in the vessel a person, in addition to the operator, in a position to observe the progress of the person or persons being towed, unless such vessel is equipped with a ski mirror as approved by the division of water safety.

legislative revisions supplanting the common law. Missouri common law originally stated that operators of both automobiles and motor boats were held to the duty of a traveler, that is the exercise of ordinary care. *See Goodwin v. Eugas*, 290 Mo. 673, 684, 236 S.W. 50, 53 (1921) (regarding the duty of automobile operators); *Nakos v. Dean*, 417 S.W.2d 680, 683–84 (Mo.App. 1967) (regarding the duty of motor boat operators). This duty of ordinary care, however, has been heightened by the legislature so that both automobile and boat operators are now required to exercise the highest degree of care. *See* Mo.Rev.Stat. § 304.010 (1986); Mo.Rev.Stat. § 306.125 (Supp.1990). In terms of automobiles, this change came in 1921. *See Welp v. Bogy*, 320 Mo. 672, 677, 8 S.W.2d 599, 600–01 (1928). For motor boats, however, this change did not come until May 25, 1989, when Mo.Rev.Stat. § 306.125 (Supp.1990), became effective. Thus, when the accident in question occurred, the defendant/respondent owed the plaintiff/appellant a duty of ordinary care. *See generally Greathouse v. Wolff*, 360 S.W.2d 297, 300–01 (Mo.App. 1962) (although this specific question was not before the court, it approved a verdict director submitted by plaintiff/water skier against defendant/boat operator, holding the operator to the duty of ordinary care).

■ " 'Ordinary care' is a relative term and its exercise requires such precautions as are commensurate with the dangers reasonably to be anticipated under the circumstances." *Nakos v. Dean*, 417 S.W.2d 680, 683–84 (Mo.App.1967). The verdict director submitted multiple acts of negligence that could breach the broad standard of "ordinary care." The allegations in the instruction were not, as appellant contends, "evidentiary questions designed to confuse the jury." Instead, the allegations specifically stated acts, supported by the evidence, from which the jury could have found that appellant did not exercise ordinary care.

The verdict director accurately reflected the controlling substantive law of negligence and did not incorporate facts capable of confusing the jury. Therefore, the trial court did not err in submitting it to the jury

and thus there can be no plain error. This point is overruled.

## II.

Appellant also claims that the trial court erred in two evidentiary rulings: (1) in permitting testimony from respondent's expert witness on water safety; and (2) in precluding appellant from submitting evidence regarding respondent's alcohol consumption on the day of the accident.

■ David Smith, a witness called by the respondent, was allowed to testify as an expert on water safety. Appellant objects to the testimony of Smith claiming that water safety is within the common experience of the jury and thus expert testimony was not necessary, and that Smith instructed the jury on the law by testifying what constituted negligence in this case. Mo. Rev.Stat. § 490.065 (Supp.1990), which governs admissibility of expert testimony, became effective on August 28, 1989, *see In re Marriage of Moore*, 797 S.W.2d 572, 574 (Mo.App.1990), and was thus controlling at the time of trial in this case. Subdivision one of § 490.065 deems an expert witness' testimony admissible "if [his or her] scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue...." Further, subdivision two allows an expert to give an opinion that "embraces an ultimate issue to be decided by the trier of fact." Before § 490.065 became effective, Missouri courts uniformly held that "[t]he decision to admit or exclude expert testimony is one left to the discretion of the trial court." *Ballwin v. Hardcastle*, 765 S.W.2d 324, 326 (Mo.App. 1989). We see no reason to adopt a different standard for reviewing a trial court's application of § 490.065.

■ The trial court's decision that Smith's "specialized knowledge" in water safety would assist the jury in deciding a fact in issue was within its discretion and within the statutory standard stated in § 490.065.1. The jury panel's responses during voir dire indicated that the members of the jury had no substantial knowledge of water skiing and water safety. Therefore,

it was neither unreasonable, nor plain error, to allow Smith to testify as an expert.

■ Appellant's allegation that Smith instructed the jury on the law by testifying that the appellant was negligent is not supported by the record. Although counsel for respondent repeatedly asked Smith for such testimony, these questions were objected to, and the objections sustained, on every occasion. Only once did Smith respond affirmatively to a question regarding appellant's alleged negligence. Appellant immediately objected to this testimony and the court sustained the objection. Smith did testify concerning applicable water safety standards and to support this testimony drew on many sources, from the Boy Scout Merit Badge Handbook on Water Skiing to Missouri statutes. The court, however, sustained all objections to questions calling upon the witness to testify that appellant was negligent, violated his standard of care, acted improperly or failed to act as a reasonable, prudent person would under similar circumstances. We hold that the testimony of Smith regarding safety standards and the applicable Missouri statute was admissible in that it aided the jury in understanding and deciding factual issues beyond common experience, *see generally Hendricks v. Missouri–Kansas–Texas R.R.*, 709 S.W.2d 483, 492–93 (Mo. App.1986), and that it was admissible via § 490.065.2. Thus, there was no plain error and the point is denied.

■ ■ Appellant claims that the trial court erred in denying his attempt to introduce evidence alleging that the respondent had consumed alcohol before the accident. Appellant apparently hoped to use this evidence to prove comparative fault on the part of respondent and to impeach his testimony. Accepting or rejecting evidence at trial is within the sound discretion of the trial court. *Parry v. Staddon*, 769 S.W.2d 811, 813 (Mo.App.1989). In order for evidence of alcohol consumption by the plaintiff to be admissible in a civil trial, there must be a showing, in addition to evidence of alcohol consumption, of "any other circumstance from which it might be inferred that [he] had an impaired physical condition

at the time of the collision [or accident]." *Id.* at 814 (quoting *Doisy v. Edwards*, 398 S.W.2d 846, 849–50 (Mo.1966)). Appellant's case-in-chief contained no evidence from which an "impaired physical condition" could be inferred, nor did appellant make an offer of proof to that effect. Accordingly, the trial court did not err in refusing the evidence and there can be no plain error. This point is denied.

### III.

■ During closing argument, counsel for the respondent argued that the amount of damages he requested was "not a lot of money nowadays when you talk about baseball players making three million dollars a year." Counsel also commented to the jury, "You try living a day without a thumb, and you know what this man is like." Appellant alleges that this was improper closing argument. The record is clear, however, that appellant failed to object at trial to either comment. Thus, any objection that might have been preserved for trial was waived. *Sherpy v. Bilyeu*, 608 S.W.2d 521, 523 (Mo.App.1980) (citing *Blevins v. Cushman Motors*, 551 S.W.2d 602, 616 (Mo. banc 1977)). Further, these comments were made only once and received so little emphasis in relation to the remainder of counsel's closing argument that there was no plain error. This point is denied.

Appellant has failed to show plain error in any form and has therefore not met the required showing for us to alter or reverse the judgment of the trial court. Accordingly, the judgment of the trial court is affirmed.

All concur.