## CHARLES A. BAKER, A. C. DIXON and HAYDEL REALTY COMPANY,' (Incorporated), Respondents, v. EDWARD L. BAKEWELL, Appellant.

St. Louis Court of Appeals. Opinion Filed February 4, 1919,

1. **BROKERS: Real Estate Brokers: Agreement to Divide Commission: Question for the Jury.** In an action by real estate broker to recover one-half of commission on account of a sale to their customer of property for which defendant broker was exclusive sales agent, as to whether or not defendant promised to pay one-half of his commission of five per cent. if plaintiffs would tell him the name of their customer, *held* a question for the jury.

2. **APELLATE PRACTICE: Motion for New Trial: Insufficient Assignment of Error Relting to Instructions: Instructions.** Paragraphs set forth as appearing in defendant's motion for new trial to the effect that the court erred in instructions given at the instance of plaintiffs, and in refusing instructions asked by defendant, are insufficient to bring before the appellate court for review errors in giving or refusing the instructions complained of.

3. ————: **Harmless Error: Instructions.** In an action by real estate brokers to recover from defendant broker, who had an exclusive agency to sell land, half of his commission of five per cent. for having disclosed the name of a customer to him, instruction embodying an unessential phrase *held* in no way prejudicial to defendant, particularly in the light of a similar allegation in the petition and evidence that was permitted to be introduced thereunder.

4. **BROKERS: Real Estate Brokers: Commissions Between Brokers: Instructions.** In such action an instruction that it was not necessary for the plaintiffs to have produced to the defendant a signed purchase contract in order to entitle plaintiffs to recover, even though the jury might find from the evidence that plaintiffs had, at the request of the defendant, endeavored to procure such a purchase contract, *held* that the instruction was proper and necessary in order to keep the real issue in the case before the jury, and to keep the jury from being misled by immaterial evidence or matters which were no defense in the case.

5. **INSTRUCTIONS: Repetition.** Requested instructions covered by others given were properly refused.

Appeal from the Circuit Court of the City of St. Louis. —*Hon. William T. Jones,* Judge.

AFFIRMED.

*Collins, Barker & Britton* and *James Campbell, Jr.,* for appellant.

(1) The court erred in not giving to the jury either the peremptory instruction in the nature of a demurrer offered by him at the close of appellees' testimony or at the close of all the testimony. (a) It is the duty of the court to direct a verdict for defendant when plaintiff fails to prove his case. Ferris & Roskopf on Instructions to Jury, section 37; Warner v. Modern Woodmen, 119 Mo. App. 222; Nolan v. Schickle, 3 Mo. App. 300; Gillmore v. Modern Brotherhood of America, 186 Mo. App. 445, 455; Arel v. First National. Fire Insurance Company, 190 S. W. 79, 80. (b) Where plaintiff testifies upon cross-examination to a statement of facts contrary to his testimony on direct examination he is bound by the last statement, and if it does not show a right to recover the court should direct a verdict for defendant. Emily Gooden v. Modern Woodmen of America, 194 Mo. App. 666, 668; Van Zandt v. Wholesale Grocer Co., 196 Mo. App. 640, 658; Yoakum v. Lusk, 193 S. W. 635. (c) When the direct testimony of plaintiff is only weakened by cross-examination, the credibility of the testimony should be submitted to the jury, but when his testimony is weakened down by cross-examination to where there is no substance left to his direct testimony, the court should direct a verdict for defendant. Independence Electric Co. v. Farley Brothers, 192 S. W. 129. (2) The court erred in giving improper instructions to the jury offered by appellees and refusing to give proper instructions to the jury offered by appellant. (a) The converse of the first instruction given by the court should have been given, and the jury told that "unless you so believe from the evidence you will find for the defendant." Moyes v. St. Louis, I. M. & S. Ry. Co., 186 S. W. 1027; McQuillin on Instructions to Juries in Missouri Civil Cases, section 103 and authorities therein cited; Ferris &

Roskopf on Instructions to Juries, sec. 28 and authorities therein cited. (b) It is improper for a court to give undue prominence to particular facts by instruction to the jury or to facts concerning the contract not alleged as part of the contract. The testimony as a whole, and the conclusion reached by the jury as to the truth or falsity thereof is all that should be submitted to the jury. Tibbe v. Kamp, 154 Mo. App. 545, 576, 579 and 583; Landrum v. Railroad, 132 Mo. App. 717, 721; Zander v. Transit Co., 206 Mo. App. 445; Boyce v. Railway Co., 120 Mo. App. 168, 175; State v. Shaffer, 253 Mo. App. 320, 331; O'Malley v. Musick, 191 Mo. App. 405; Ferris & Roskopf, Instructions to Juries, section 29; McQuillin on Instructions to Juries in Missouri Civil Cases, section 118; Chappell v. Allen, 38 Mo. App. 213, 222.

*Claud D. Hall* for respondent.

(1) The appellant has not made any sufficient assignment of errors as required by the rules of this court. Rule 18 of this court; Johnston v. Ragan, 265 Mo. 420; Zahm v. Royal Fraternal Union of St. Louis, 154 Mo. App. 70; Honeycutt v. Railroad, 40 Mo. App. 674. (2) The rights and liabilities of a real estate broker and his sub-agent depend upon the terms of the particular contract, and they are construed and enforced as other contracts. 19 Cyc 238; Dillard v. Steele, 168 Mo. App. 206. (3) The defendant (appellant) had an exclusive agency for the sale of the property in question which gave him a right to a commission of five per cent of the purchase price paid to the owner, Britton, on any sale made during the term of the agency. (By this contract Bakewell was practically the owner as far as a sale was concerned. 1. Bakewell was still entitled to his five per cent commission under his exclusive contract though sale made by another broker. Gauze v. Hoyt, 127 Iowa, 340; Grover v. Henderson, 120 Mo. 367; Sylvester v. Johnston, 110 Tenn. 392. 2. Even if Britton sold the property himself, Bakewell was entitled to his commissions. Attix v. Pelan, 5 Iowa,

336; Metcalf v. Kent, 134 Iowa, 487; Kimmel v. Skelly, 130 Cal. 555; Stringfellow v. Powers, 4 Tex. Civ. App. 199; Singleton v. O'Blenis, 125 Ind. 151; Tram v. McCormick, 92 Cal. Levy v. Roth, 17 Nusc. 402; Block v. Snook, 204 Pa. 119; Wetsel v. Wagner, 41 Mo. App. 509; Wright v. Brown, 68 Mo. App. 577; Stinde v. Blesch, 42 Mo. App. 578; Holden v. Willard, 35 Mo. App. 654; McCormack v. Henderson, 100 Mo. App. 647. 3. Even if Bakewell's agency had been revoked before the end of its term, he still was entitled to five per cent commission. McCray v. Pfost, 118 Mo. App. 672; Burke v. Priest, 50 Mo. App. 310; Chopin v. Bridges, 116 Mass. 105; Harrison v. Angerson, 115 Mo. App. 226; Bloomenthal v. Goodal, 89 Cal. 251. 4. And where there is a sale made to a person named by an agent, the owner (in this case Bakewell) could not deprive plaintiff of his agreed compensation. Corder v. O'Neil, 176 Mo. 401. (4) The action in this case is upon a contract definite in form, founded on a good consideration, mutual in operation and lawful in purpose. Young v. Millon (Mo. App.), 183 S. W. 355; Handlan v. Miller, 143 Mo. App. 101. (5) Issue was joined therein and trial duly had. Cook v. Pub. Co., 241 Mo. 326; Bean v. Licht, 165 Mo. 173; Whiteaker v. Railroad, 245 Mo. 644. (6) There was substantial testimony as to the making of the contract sued on, and its credibility was for the jury. Wack v. Railroad, 175 Mo. App. 111; Holzemer v. Railroad, 261 Mo. 369; Nugent v. Milling Co., 131 Mo. 241; Stella v. Railroad, 265 Mo. 97. (7) Even where a plaintiff makes admissions against interest, this does not necessarily take from the jury the right to judge of his testimony. Huff v. Railroad, 213 Mo. 495; Downs v. R. & S. Co., 175 Mo. App. 387. (8-9) Respondents' instructions were applicable to pleadings and evidence and according to the theory on which the case was tried and were proper. Degonia v. Railroad, 224 Mo. 558; Frick v. Railroad, 161 App. 332. (10) Defendant's instruction No. 1 was properly refused. (a) It put to the jury the same issues as defendant's

given instructions Nos. 2 and 3 (Abs., p. 61).    (b) It was also misleading.

BECKER, J.—This is an action by plaintiffs against the defendant seeking to recover on an alleged contract. Judgment resulted in favor of plaintiffs and against the defendant in the sum of $1525, and the defendant appeals.

All the parties to the action are engaged in the real estate business, and prior to October 8, 1914, appellant Bakewell was the exclusive agent of one F. H. Britton for the sale of a certain piece of real estate. Plaintiffs alleged in their petition that on or about October 8, 1914, appellant Bakewell, entered into an agreement with the respondents whereby he agreed that if the respondents would disclose to him the name of a person or institution that would likely purchase the said Britton property, or introduce such person or institution, or its authorized officer or representative to him, that, in the event of a sale of the said Britton property to such person or institution, during the period of time for which the said Bakewell had his exclusive sales contract for said property, he would pay the respondents jointly the sum of one-half of five per cent. of the purchase price, such five per cent. of the purchase price being the commission provided for in Bakewell's contract of exclusive sale of the said real estate; that in conformity with such alleged contract the respondents on or about October 9, 1914, disclosed to Bakewell the name of the Ursuline Convent and Academy as a prospective purchaser of the said Britton property, and introduced the said authorized representative of the convent to Bakewell and assisted Bakewell, at some expense to themselves, in showing said property to such representative.

That some time after October 8, 1914, and before the expiration of the time limit of Bakewell's exclusive sales agency contract with Britton, the sale of the property was made to the said Ursuline Convent and Academy for $61,000, and thereby plaintiffs below, re-

spondents here, became jointly entitled to said one-half, of five per cent of $61,000, amounting to $1525.00, for which judgment was sought against Bakewell, defendant below, appellant here.

The answer admitted the exclusive contract of sale of the particular property in question as being in Bakewell and denied each and every other allegation in plaintiffs' petition.

According to plaintiffs' contention the condition upon which they were to receive the division of the commission was for merely disclosing the name or introducing a person to the defendant who would be likely to purchase the said property, and that if such person did, at any time during the term of the exclusive sales contract held by Bakewell, purchase the property, then they were to receive one-half of five per cent. commission; while defendant's version of the agreement is that plaintiffs were to secure a purchaser for said property within the time limit specified in the exclusive sales contract before they should become entitled to one-half of five per cent. commission.

On behalf of plaintiffs Charles A. Baker testified that he was one of the plaintiffs, was in the real estate business, and that A. C. Dixon, also one of the plaintiffs, informed him about the first of October, 1914, that the Ursuline Convent and Academy were in the market for twenty-five or thirty acres of ground, preferably in the vicinity of Kirkwood or Webster; that the witness knowing of the Britton property located in that neighborhood being for sale, suggested it as property that might be suitable; that he had noticed defendant Bakewell's sign upon the Britton property and the following day went to see Mr. Bakewell and was informed by Bakewell that he had an exclusive agency contract for the sale of the property at the price of $65,000; that Bakewell stated he was anxious to make a sale of this property because his agency was about to expire and asked the witness to give him the name of his prospective purchaser, which witness declined to do without consulting Mr. Dixon and the Haydel Realty Company,

with whom he was associated in the matter; that he did, however, volunteer the information that it was a Catholic educational institution, whereupon Bakewell stated that he was a Catholic and believed by reason thereof he could be of more use than the witness in making the sale, and said "if you will give me the name of the institution I will give you one-half of the five per cent. that I am entitled to if the sale is made to that party;" that the witness replied that he would rather not give the name until he had consulted his associates, to which Bakewell replied: "All you will have to do is to give me the name of this party. I am a Catholic, my father is a very prominent Catholic and I am sure that I can be of more service in making the sale than you could without me, and all I want you to do is to give me the name. Whether you get the contract for the sale, or whether you get the earnest money or not, it will make no difference at all. If the sale is made to the institution whose name you give me, I will give you one-half of that five per cent, that I am entitled to." The witness did not disclose the name at that time but agreed to introduce his associates to Bakewell, which he later on did, with the result that they did disclose to Bakewell the name of the prospective purchaser. That in the early part of December the witness had a conference with Bakewell in which Bakewell said: "Mr. Baker, I am glad you have come in here, I have some things to tell you. Sit down. Mr. Thomas has 'butted in' and has made this sale. . . .;" that the sale price was $61,000, and that he, Bakewell, would not get his regular commission, but that Thomas would get the commission and that Baker and his associates would have to go to Thomas or to Mr. Britton for their commission as he, Bakewell, did not get that much himself; that thereafter the witness and Mr. Haydel and Mr. Dixon called on Bakewell and demanded the payment of one-half of five per cent. commission, which Mr. Bakewell refused and that the witness on December 21st wrote a letter to the defendant demanding the commission.

On cross-examination the witness admitted that in his deposition which had been previously taken, he had been asked what had been said by him and by Mr. Bakewell in their conference on or about the 10th day of October, 1914, and that he had answered: "I said, 'Mr. Bakewell, you have a sign on the Britton property at Oakland; what kind of an agency have you?' Mr. Bakewell replied, 'I have an exclusive agency and my commission is five per cent, and if you get a buyer, if you have a buyer, I will divide the commission with you.' " And when asked whether that was a true statement of the facts, he replied, "Essentially." And on redirect examination, and after the above cross-examination, as the above excerpts of his disposition Mr. Baker testified and admitted other things which he had testified to in said deposition, among others that Mr. Bakewell had told him, "that it made no difference whether he got the contract or earnest money for the sale, if he would name a purchaser, and that if the deal was closed he would receive his one-half of the five per cent. commission for which he had a contract with Britton."

The deposition of Henry H. Haydel was introduced on behalf of the plaintiffs and read to the jury. He testified that he was the president of the Haydel Realty Company; that on two or three occasions he went to the office of Bakewell, in company with plaintiffs Baker and Dixon, with reference to the sale of the said Britton property, and at one of the conferences Mr. Bakewell stated that, "he had a full commission and that he was willing to divide with us, Mr. Baker having brought him a prospective purchaser, I don't know whether by name or otherwise, some weeks before that, and he would give us one-half commission on his total five per cent." The witness further testified that Bakewell did not say on what terms he would divide the commission, or what they were to do to earn one-half of it, excepting, "that it was understood we were to furnish a purchaser."

On cross-examination the witness testified that after the Britton property was submitted they had made no further effort to see other property or to offier other property to the convent, than that of the Britton prperty.

A. C. Dixon testified that he was one of the plaintiffs, and was engaged in the real estate business; that in connection with Mr. Haydel he had been trying to sell property to the Ursuline Convent and Academy since July, 1913, and up to October, 1914, had not succeeded; that in the latter month he had called upon plaintiff Baker to see if he had any property suitable to the needs of the convent; that Baker had submitted several pieces of property but all were too high priced, and that finally Baker suggested the Britton property as the best he knew of and gave the witness a letter of introduction to Bakewell; that the witness called upon Bakewell and that Bakewell showed him his exclusive sales contract and said, "he would give us two and one-half per cent. and requested that he be permitted to go and see our client," and that "after telling who the client was he would divide the commission just the same, just the same; to give him the name of the client." "We would get our commission just the same if the sale was made," if they would name the client; that the witness thereupon did disclose the name of his client but did not give Bakewell the privilege of going to see the prospective purchaser; that the name was disclosed only after appellant had made his proposition, but it was in the same conversation; that there was, nothing said in said conversation about the witness or his associates being required to produce a purchase contract or purchase money deposit; that all that was said was, "You tell this buyer and we will give you half of the commission."

At the close of plaintiffs' case defendant offered an instruction in the nature of a demurrer, which the court refused; whereupon the defendant introduced Dr. Frank J. Lutz, as a witness, who testified that he had spoken to the sisters of the Ursuline Convent and

Academy relating to the purchase of the Britton property, and upon noticing Bakewell's sign upon the property had called up his office regarding the price, but had not disclosed who the party was for whom he was making the inquiry; that he then consulted with Mr. Thomas, who was in the real estate business in Kirkwood, and suggested to him that he find out what price the property could be bought for and the terms, etc.; that Thomas did confer with Britton with the result that the sisters bought the property for $61,000.

Edward L. Bakewell, defendant herein, testified that some time in October, 1914, Mr. Baker had come to his office and stated that he and two other agents represented an institution who wanted to buy a piece of property in St. Louis county and wanted to know what property he had on his list which he controlled exclusively; that he at first submitted him a piece of property known at the "Yarnell Track," which Mr. Baker, a few days later, stated he had submitted to his undisclosed clients but that they were not interested; that he thereupon suggested the Britton property, "for which I had the exclusive contract of agency," and at that time he showed him the exclusive contract of agency and said, "if he and his associates would produce a buyer for the Britton property, that I would divide my commission with them; and then I did not hear from it for several days, and I kept calling Mr. Baker up. In the meantime, he had sent Mr. Dixon over. I believe, with a letter of introduction, introducing him to me, and I kept right after them, trying to get these nuns to go out and look at the property . . . up to that time they had not disclosed to me the name of their client. Shortly after that—it must have been within the week following—they disclosed me the name of their clients, and I immediately suggested we get right busy and take the nuns out and show them this piece of property, so I never met the nuns up to that time at all—none of them—and we finally agreed on a certain day that was adopted and to the best of my recollecion, it was the 14th of November;" that on

that day the witness and plaintiffs took the nuns out to examine the property; that about this time the witness had his exclusive agency contract extended for the period of ninety days; that the plaintiffs called upon the nuns at a later day and had reported to him that the sisters would make an offer for the property; that a day or so thereafter Mr. Britton telephoned him that a Mr. Thomas had delivered to him a signed contract for the purchase of the property for $60,000, and he got this information from Mr. Britton just before the plaintiffs reported to him that they too had an offer of $55,000 from their client; that the witness and plaintiffs and Mr. Britton held conference with the result that the plaintiffs endeavored to obtain from their client the written offer of $55,000 for the property but failed to do so, and that at this conference it was stated that the highest offer that could be secured by the plaintiffs for the property was $55,000; that after the sale had been consummated with the Ursuline Convent and Academy he had accepted $1500 from Mr. Britton as his commission and released Britton from any further claims under his exclusive agency contract; that he did not obtain the consent of the plaintiffs to the cancelling of the exclusive agency contract for such sum, nor did he consult them about cancelling the contract before it was done.

Mr. Roy Britton testified that he handled the transaction relating to the Britton property, for his father, and was called to attend a conference in Mr. Bakewell's office at which all of the plaintiffs were present; that when he was informed that the plaintiffs had a prospective purchaser for the Britton property, he told them that a Mr. B. F. Thomas had already been to see him relating to a prospective purchaser; that Mr. Bakewell, in this meeting, asked him if he knew what Mr. Thomas had in mind, but the witness told him he did not but that it was some Catholic institutions, and Bakewell said: "Tell these people, they are the same ones who are Mr. Dixon's clients and he can get a proposition from them." Mr. Bakewell said: "We

have got a proposition of $55,000." The witness stated that such an amount was much less than they had contemplated selling for, but that if Mr. Thomas has merely butted into the transaction and it was Mr. Dixon's client, then Mr. Dixon can get a written proposition," to which Dixon stated that he could not get a proposition for more than $55,000; that the witness thereupon told Mr. Dixon to get the proposition in writing and he would submit it to his father. Mr. Dixon stated he would get it within an hour but this Dixon was unable to do; that at the time of this conference they did not have any written proposition from Mr. Thomas, but that the following morning Mr. Thomas presented him a written proposition signed by the Ursuline Convent and Academy, to buy the same for $60,000 and an earnest money check for $1000; that this offer was refused and a counter-proposition made which was accepted by the Ursuline Convent and Academy, namely to buy the property for $61,000; that after the sale had been consummated Mr. Bakewell had insisted upon receiving a full commission of five per cent on the $61,000, but finally accepted $1500 in settlement of his contract.

Several of the sisters connected with the convent testified that they had first inspected the property, going out to see it with the son of Mr. Thomas, and they had gone out a few days later with Mr. Baker.

Mr. Thomas was a witness for defendant and testified to the same effect as had Dr. Lutz.

At the close of the case defendant again offered an instruction in the nature of a demurrer, which the court refused.

I

It is earnestly contended that the trial court should have directed a verdict for defendant. It is argued in support of this assignment of error that the direct testimony of plaintiff, Baker, was flatly contradicted by his testimony on cross-examination and that it is the last statement of a witness by which he is bound and

that when such last statement does not show a right
to recover the court should direct a verdict for defend-
ant.

It is because of this contention that we have at
such length set out the testimony in this case in our
statement of facts.

It is true that the testimony of the witness, Baker,
is conflicting, yet when we come to analyze his state-
ments on his direct examination and compare them with
his statements on cross-examination, we do not find
therein a flat contradiction but rather a weakening of
plaintiffs' direct testimony such as would affect the
credibility of the testimony, making it a question for the
jury to determine. It is conceded that the testimony
on direct examination made out a case sufficient, if
standing alone, to have taken the case to the jury. It
was tantamount to a statement that defendant had
agreed to divide his commission with plaintiffs upon
the mere naming of some one, who, during the existence
of the exclusive sales contract held by the defendant on
the particular property in question, should become the
purchaser of said property. Then on cross-examination
certain questions and answers were read to the witness
and he was asked whether they correctly set out the
questions asked him and his answers thereto at the
time his deposition had been taken. In this deposition
appeared the answer that at a time when the witness
had his conference with defendant Bakewell, Bakewell
had stated, "I have an exclusive agency and my com-
mission is five per cent, and if you get a buyer, if you
have a buyer, I will divide the commission with
you;" which answer the witness, Baker, stated was
"essentially" as made by him. And when asked whether
it was a true statement of the fact he again answered:
"Essentially." Yet that must be considered in con-
nection with other portions of his testimony in the
deposition which was brought out by the re-direct
examination, in which it appears that the witness had
testified that, "Bakewell had said to me that it made
no difference whether we got the contract or earnest

money for the sale, if we would name the purchaser."
The learned trial judge, in our view of the case, very
properly held that this was not such a flat contradiction
of the testimony as to result in rendering nugatory the
testimony of the witness on his direct examination, but
merely affected the credibility of the testimony which
question was properly one for the jury to determine.

However the case does not alone rest upon the testi-
mony of the witness, Baker, for it is corroborated to
some extent at least by the testimony of the plaintiff,
Dixon, who testified to a conference had between himself
and Bakewell, at which Bakewell had shown him his
exclusive sales contract, and said: "He would give us
two and one-half per cent, and requested that he be
permitted to go and see our client," and that "after
telling who the client was he would divide the com-
mission just the same, just the same; to give him the
name of the client." "We would get our commission
just the same as if the sale was made." And in another
part of his testimony he states that at this conference
defendant, Bakewell, had said to him: "You tell this
buyer, and we will give you one-half of the commission.

One reading the record in this case must neces-
sarily come to the conclusion that while there was a
weakening of proof, yet it was not tantamount to a
failure of proof, and therefore the question was prop-
erly left to the jury. [See Crank Co. v. Smith, 187 Mo.
App. 259, l. c. 261, 173 S. W. 691.]

## II.

The remaining assignments of error relate to the
instructions. It is perhaps well to note that these as-
signments under the most recent rulings of our supreme
court, are not properly before us in that the motion for
new trial covers these points in the following language:
"Seventh. The court erred in the instructions given
to the jury at the instance of the plaintiffs." "Eighth.
The court erred in refusing instructions asked by the
defendant." Under the ruling in the case of Kansas
City Disinfecting & Mfg. Co. v. Bates Co. (Mo.), 201 S.

W. 92, neither of these paragraphs set forth as appearing in defendant's motion for new trial are sufficient to bring the matter before us on appeal. [See also Polski v. City of St Louis, 264 Mo. 458, 175 S. W. 197; Wampler v. Railroad, 269 Mo. 464, 190 S. W. 908; Lampe v. United Rys. Co. (Mo. App.), 202 S. W. 438] However, it may not be out of place to state that we have examined the points raised by appellant and find them to be without merit.

The first instruction given by the court at the request of the plaintiffs outlined the contract as sued upon and instructed the jury that they believed from the evidence that this contract, as outlined, was entered into and the name of the Ursuline Convent and Academy was disclosed as a "prospective purchaser of the said Britton property, and at the request of the defendant, assisted in showing property to said Convent or its officers, and incurred expense in doing so, and if you further find and believe from the evidence that thereafter and prior to January 15, 1915, a sale of the said H. F. Britton property was made to the said Ursuline Convent and Academy, then you shall find a verdict for plaintiffs." It is argued that the phrase, "and at the request of the defendant assisted in showing said property to said convent and incurred expense in doing so," was unnecessary and gave undue prominence to particular facts concerning the contract not alleged as part of the contract, and that the including of this clause in the instruction burdened the minds of the jury with, "an occurrence that had been troublesome and annoying and expensive to the appellees, and for which they would not be compensated unless they return a verdict in favor of appellees, and that unless they did return a verdict for the appellees, the time and money expended by them would be lost." It may be conceded that this phrase was not essential to the instruction, yet it is to be remembered that there was an allegation in plaintiffs' petition covering the point in question, and that there was testimony adduced in support thereof. In fact there is no

controversy but that at the request of the defendant the plaintiffs did take the sisters of the convent out to view the said property, and that .the plaintiffs and defendant shared the expense of the automobile which was hired for the purpose. The embodying in the instructions, and thereby predicating plaintiffs' recovery upon the finding and believing by the jury of the additional fact, was not, in our view, in any way, prejudicial to the defendant and this particularly so in the instant case in light of the allegation in the petition and evidence that was permitted to be introduced thereunder.

The second instruction given by the court at the request of plaintiffs is criticised on the ground that it calls particular attention to a fact disclosed in evidence by way of defense in such a manner that it becomes prejudicial to the rights of the appellant. We do not deem it necessary to set forth this instruction at length, it being sufficient to say with reference thereto, that the instruction is not one which covers the entire case or directs a verdict but is one that was properly given at the request of plaintiffs in view of the fact that the defendant introduced testimony to the effect that plaintiff had not produced a contract of purchase, but that the contract of purchase was obtained by another real estate agent who had submitted it to Mr. Britton, the owner of the property, and also testimony to the effect that after plaintiffs' alleged agreement had been made with defendant, plaintiffs volunteered to attempt to get a contract of purchase, in which they were not successful. The instruction merely told the jury that if they found and believed from the evidence that the plaintiffs entered into the contract with the defendant, as outlined in instruction number one, it was not necessary for the plaintiffs to have produced to the defendant a signed purchase contract, in order to entitled plaintiffs to recover in this action, even though the jury might find from the evidence that plaintiffs had, at the request of the defendant, endeavored to procure such a purchase contract. The learned trial judge un-

doubtedly was of the opinion, as we are, that the instruction was proper and necessary in order to keep the real issue in the case before the jury and to keep the jury from being misled by immaterial evidence or matters which were no defense in the case.

## III.

It is also assigned as error that the court refused to give two instructions requested by the defendant. There is no merit in this contention in that a reading of the instructions that were given at the request of the defendant shows that the first instruction that was refused was covered by instructions numbers two and three, given for the defendant; while the second instruction requested by defendant, which was refused, was covered by instructions numbers one and three given for the defendant.

Being of the opinion that the case was one for the jury and the instructions having fairly and fully covered the case, it follows that the judgment should be affirmed. It is so ordered.

*Reynolds, P. J.,* and *Allen, J.,* concur.